## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| JATONYA CLAYBORN MULDROW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )       Case No.  4:18-CV-02150-AGF |
| | ) |
| CITY OF ST. LOUIS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This employment discrimination case is before the Court on Plaintiff Jatonya Muldrow's motion to enforce settlement and for attorney's fees.  (Doc. No. 34).  In the motion, Plaintiff claims to have reached an oral settlement agreement with Defendants City of St. Louis and St. Louis Police Captain Michael Deeba.  Defendants oppose the motion, alleging that no settlement agreement was reached because they rescinded their settlement offer before Plaintiff accepted all essential terms of the agreement.  For the reasons discussed below, the Court will deny Plaintiff's motion.

## BACKGROUND

Plaintiff, a St. Louis City police officer, alleges Defendants subjected her to sex discrimination and retaliation in violation of the the Missouri Human Rights Act and Title VII.  (Doc. No. 4).  The parties participated in good faith in court ordered alternative dispute resolution but were unable to resolve the case through mediation.  (Doc. No. 19).

Recently, however, the parties resumed settlement negotiations.  The essential facts of these negotiations are undisputed.

On May 18, 2020, Defendants' counsel emailed a monetary settlement offer to Plaintiff's attorney with the intent to reach "a global resolution of all matters at issue" in the case.  (Doc. No. 34-1 at 4).  The parties negotiated the monetary amount via a series of emails and on May 20, 2020, counsel for Defendants sent Plaintiff's counsel a new monetary offer which counsel  agreed to discuss with Plaintiff.  (Doc. No. 34 at ¶¶ 3-4). Before Plaintiff's counsel communicated the offer to her client,  however, counsel for Defendants told her that Defendants also wanted the settlement agreement to contain a mutual non-disparagement clause and that, if that clause was a problem, they should discuss.  (*Id.* at ¶ 5).  According to Defendants' counsel, the non-disparagement clause was an essential part of the agreement because  Defendant Deeba had expressed it was important to him and had "specifically instructed [defense counsel] to include a mutual non-disparagement clause as part of the settlement."  (Doc. No. 43-1 at ¶ 5).  Plaintiff's counsel replied that they would need to discuss the non-disparagement clause and added that the settlement agreement would also need a carve out for Plaintiff to pursue a pending appeal against the City in an unrelated action.  (Doc. No. 34 at ¶ 6).  The parties agreed to talk on the phone about these matters the following day.  (*Id.* at ¶ 7).

On the morning of May 21, 2020, Plaintiff's counsel called Defendants' attorney and confirmed that Plaintiff would accept the monetary settlement offer.  (*Id.* at ¶ 8). Plaintiff's counsel also stated that, "the parties should be able to reach an agreement on non-disparagement and the appeal carve out, once Plaintiff's counsel had an opportunity

to speak to Plaintiff and review Defendants' proposed settlement language." (*Id.* at ¶ 9).

Defendants' counsel said she would send a draft settlement agreement to Plaintiff's

counsel for her review. (*Id.* at ¶ 10).

Shortly after the call, Defendants emailed a draft settlement agreement to

Plaintiff's counsel which contained a non-disparagement clause and a carve out for

Plaintiff to pursue her unrelated appeal.  (*Id.* at ¶ 11).  Plaintiff's counsel began reviewing

the draft settlement agreement "so that [she] could make proposed revisions, if

necessary."  (Doc. No. 34-3 at ¶ 11).  While Plaintiff's counsel was reviewing the draft,

however, Defendants' counsel was directed by her clients "to rescind the settlement

offer" because the  Internal Affairs Division of the St. Louis Police Department had

received a misconduct allegation against Plaintiff that it needed to investigate.  (Doc. No.

43-1 at ¶ 9).  Before Plaintiff's counsel could respond to the draft settlement agreement,

counsel for Defendants sent an email stating, "Unfortunately there have been some

allegations of misconduct made against your client and we must withdraw our settlement

offer.  Once we have had an opportunity to evaluate this information we may be able to

resume settlement negotiations.  Sorry for any inconvenience."  (Doc. No. 34-3 at ¶ 12).

## LEGAL STANDARD

A federal diversity court applies the forum state's law of contract interpretation to

determine whether a settlement agreement was formed.  *State Auto Prop. & Cas. Ins. Co.*

*v. Boardwalk Apts., L.C.*, 572 F.3d 511, 514 (8th Cir. 2009).  "Under Missouri law, the

essential elements of a valid settlement agreement are the involvement of parties who are

competent to contract, a proper subject matter, legal consideration, mutuality of

obligation, and mutuality of agreement." *Ross Dress for Less, Inc. v. St. Louis Retail Outlet, LLC*, No. 4:18-CV-1289-CDP, 2020 WL 1693680, at *7 (E.D. Mo. Apr. 7, 2020) (citing *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006)). "Negotiations or preliminary steps towards a contract do not constitute a contract." *J.H. v. Brown*, 331 S.W.3d 692, 701-02 (Mo. Ct. App. 2011). Rather, "[t]he creation of a valid settlement agreement requires a meeting of the minds and a mutual assent to the essential terms of the agreement." *Ross Dress for Less, Inc.*, 2020 WL 1693680, at *7 (quoting *St. Louis Union Station Holdings, Inc. v. Discovery Channel Store, Inc.*, 301 S.W.3d 549, 552 (Mo. Ct. App. 2009)). "A mutual agreement is reached when 'the minds of the contracting parties [] meet upon and assent to the same thing in the same sense at the same time.'" *Grant v. Sears*, 379 S.W.3d 905, 916 (Mo. Ct. App. 2012) (quoting *Kunzie v. Jack–in–the–Box, Inc.*, 330 S.W.3d 476, 483 (Mo. Ct. App. 2010)). "In determining whether a meeting of minds has occurred, the court looks at the objective manifestations of the parties." *Brooks v. Standard Fire Ins. Co.*, No. 4:14-CV-182 CEJ, 2014 WL 7157357, at *1 (E.D. Mo. Dec. 15, 2014) (citing Missouri cases).

The party requesting enforcement of a settlement agreement has the burden of proving the existence of the agreement by "clear, convincing, and satisfactory evidence." *Matthes v. Wynkoop*, 435 S.W.3d 100, 106 (Mo. Ct. App. 2014) (quoting *Paragon Lawns, Inc. v. Barefoot, Inc.*, 304 S.W.3d 298, 300 (Mo. Ct. App. 2010)); *see also Kenner v. City of Richmond Heights, Mo.*, 356 F. Supp. 2d 1002, 1008 (E.D. Mo. 2005). "Evidence is clear and convincing if it instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition, [such that] the fact finder's mind is left with

4

an abiding conviction that the evidence is true." *Matthes*, 435 S.W.3d at 106 (quoting *Grant*, 379 S.W.3d at 915).

## DISCUSSION

**Mutual Assent to the Non-Disparagement Clause**

Plaintiff argues that a settlement agreement was formed during the May 21, 2020 phone call because the parties had agreed upon all of the contract's essential terms. According to Plaintiff, the only remaining issue was "the technicality of the language of the settlement agreement," including the wording of the non-disparagement clause and the appeal carve out.  (Doc. No. 34 at ¶ 20).  She insists that the wording of the agreement, however, was an "ancillary issue" that did not need to be resolved for there to be a valid, enforceable contract.  (*See id.* at ¶ 14).  Plaintiff claims that the parties' actions following the phone call—specifically, Defendants sharing a draft agreement and Plaintiff's attorney immediately reviewing it—serves as proof that they "clearly believed" they had reached a settlement and were working to finalize the technical details.  (*Id.* at ¶ 21).

In response, Defendants argue that Plaintiff has failed to produce clear and convincing evidence that a contract was formed because she did not show that she accepted the mutual non-disparagement clause during the parties' phone call.  Defendants claim they made clear to Plaintiff that the non-disparagement clause was an essential term during negotiations, but that the closest they got to an acceptance of the term was Plaintiff's counsel saying that  "the parties should be able to reach an agreement on non-disparagement . . . once [she] had an opportunity to speak to Plaintiff and review

Defendants' proposed settlement language." (Doc. No. 43 at 3-4).  Because Plaintiff's attorney still needed to confirm with Plaintiff her assent before agreeing to the non-disparagement clause, Defendants assert that the parties were still negotiating whether the term would be included.  The draft settlement agreement Defendants sent, therefore, was merely a part of the ongoing negotiation process and not evidence that any settlement had been reached.

Here, the Court agrees with Defendants that Plaintiff has failed to establish by clear and convincing evidence that a settlement agreement was formed.  A review of the parties' emails and affidavits  reveals that there were three important terms that the parties were negotiating:  (1) the monetary settlement amount, (2) the carve out for Plaintiff's appeal, and (3) the mutual non-disparagement clause.  Defendants conveyed the significance of the non-disparagement clause to Plaintiff in their email discussions, during the May 21, 2020 phone call, and by including a draft of the clause in their proposed settlement agreement.  Given that defense counsel both communicated the term's importance and attested to Defendant Deeba specifically requesting the clause's inclusion, the Court finds that the non-disparagement clause was an essential term of the agreement.  *See Matthes*, 435 S.W.3d at 107 ("Which contractual terms are 'essential depends on the agreement and its context . . . .'" (quoting *Shellabarger v. Shellabarger*, 317 S.W.3d 77, 82 (Mo. Ct. App. 2010))).

Because the non-disparagement clause was an essential term, Plaintiff must demonstrate that there was a "meeting of the minds and a mutual assent" to the inclusion of the clause in the agreement.  However, Plaintiff's counsel never received confirmation

6

that Plaintiff agreed to the term.  By her own admission, Plaintiff's counsel told

Defendants that they "should be able to reach an agreement" on non-disparagement after

she spoke again with Plaintiff.  Mutual assent requires agreement from both parties to the

"same thing in the same sense at the same time."  *Grant*, 379 S.W.3d at 916 (quoting

*Kunzie*, 330 S.W.3d at 483).  Plaintiff's counsel's statement that they "should be able to

reach an agreement" at some time in the future after Plaintiff could review the draft

language convinces the Court there was no mutual assent to the non-disparagement

clause prior to the time the offer was rescinded.  As a result, the Court finds that there is

no enforceable settlement agreement between Plaintiff and Defendants City of St. Louis

and Deeba.

**Enforceability of the Monetary Settlement Against Defendant City of St. Louis**

For the first time in her reply, Plaintiff argues that even if the Court should find

that she did not accept the mutual non-disparagement clause that there is still an

enforceable settlement between Plaintiff and Defendant City of St. Louis because the

only essential term that needed to be agreed to between those parties was the monetary

settlement amount.  (Doc. No. 45 at 4-5).  Plaintiff explains:

> The Plaintiff's lawsuit includes causes of action against Defendant
> City of St. Louis and its employee, Defendant Michael Deeba. As set forth
> in the City's own Motion in Opposition, the client for whom the City
> Counselor's office sought a mutual non-disparagement clause was the
> Individual Defendant, Michael Deeba, and not the City of St. Louis. All
> material terms with regard to the settlement with Defendant City of St. Louis
> had been reached, since there was no remaining material items left for
> discussion, as the monetary settlement had unequivocally been agreed to by
> the Plaintiff and the City Counselor, who has authority to bind the City.

(*Id.*).  Plaintiff does not provide caselaw to support this argument, nor does she claim that counsel discussed separate settlement agreements for each Defendant.

In their surresponse, Defendants reject the assertion that the monetary settlement can be enforced against Defendant City of St. Louis because Defendants never intended to reach an agreement that did not include a settlement of all claims.  Defendants state they never would have entered such an agreement for "the obvious reason" that the City of St. Louis would have had to continue to bear the costs of the continued litigation against Defendant Deeba.  (Doc. No. 47 at 3).  Defendants claim that enforcing the monetary settlement against Defendant City of St. Louis only would be tantamount to the Court creating and enforcing a new agreement that the parties never intended.  Because the Court is required to ascertain the intentions of the parties and give effect to those intentions, Defendants argue that Plaintiff's request must be denied.

Again, the Court agrees with Defendants that Plaintiff has failed to prove by clear and convincing evidence that a settlement agreement exists between Plaintiff and Defendant City of St. Louis.  There is no evidence that separate settlement agreements were ever discussed in the parties' contract negotiations.  To the contrary, Defendants specifically told Plaintiffs that their settlement offer was to reach "a global resolution of all matters at issue" in the case.  Because there is no proof the parties intended to form a contract that would only resolve Plaintiff's claims against Defendant City of St. Louis, the Court finds there is no enforceable agreement as to the monetary settlement amount.

**Enforceability of an Oral Contract Against the City of St. Louis**

In addition to arguing that no settlement agreement had been reached, Defendants also argued that—even if the parties agreed to all essential terms—an oral settlement would be unenforceable because under Missouri law a contract with a city must be "reduced to writing, dated, and signed by the parties or their representative."  (Doc. No. 43 at 5).  The Court does not address the merits of this argument because it finds that the Plaintiff did not assent to the mutual non-disparagement clause and, thus, no oral contract was formed.

Neither party requested an evidentiary hearing, and the Court finds a hearing is not necessary as the essential facts, including the timeline of the parties' actions, are not in dispute.

<u>**CONCLUSION**</u>

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to enforce settlement and request for attorney's fees is **DENIED**.  (Doc. No. 34).

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 24th day of June, 2020.

9