# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2975
_____

Jatonya Clayborn Muldrow

*Plaintiff - Appellant*

v.

City of St. Louis, State of Missouri; Michael A. Deeba, in his individual and official capacity

*Defendants - Appellees*

------------------------------

United States

*Amicus Curiae*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: December 16, 2021
Filed: April 4, 2022
_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Appellant Sergeant Jatonya Clayborn Muldrow of the St. Louis Police Department (Department) brought Title VII claims against the City of St. Louis and state law claims against both the City of St. Louis and Captain Michael Deeba of the Department.  The district court[1] granted the City of St. Louis and Captain Deeba's motion for summary judgment, finding in favor of the City of St. Louis on Sergeant Muldrow's Title VII claims and simultaneously dismissing her state law claims against the City of St. Louis and Captain Deeba.  Sergeant Muldrow now appeals the district court's grant of summary judgment.  Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

In 2008, Sergeant Muldrow was transferred from her position as a patrol detective to the Department's Intelligence Division.  At various points during her time in the Intelligence Division, Sergeant Muldrow worked on public corruption and human trafficking cases, served as head of the Gun Crimes Intelligence Unit, and oversaw the Gang Unit.  Sergeant Muldrow maintained a traditional schedule in which she worked Monday through Friday from 8:00 a.m. to 4:00 p.m. or 9:00 a.m. to 5:00 p.m.  In 2016, while she was still assigned to the Intelligence Division, the Federal Bureau of Investigation (FBI) deputized Sergeant Muldrow as a Task Force Officer (TFO) for its Human Trafficking Unit.  As a TFO, Sergeant Muldrow had the same privileges as an FBI agent: access to FBI field offices and databases, the opportunity to work in plain clothes, access to an unmarked FBI vehicle, authority to conduct human-trafficking related investigations outside of the St. Louis city limits, and the opportunity to earn up to $17,500 in annual overtime pay.

In 2017, Interim Police Commissioner Lawrence O'Toole replaced the Commander of Intelligence, Captain Angela Coonce, with Captain Deeba.  Shortly

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

after assuming his new role, Captain Deeba began making personnel changes.[2]  He announced the transfer or detachment of 17 male officers and 5 female officers across the Department from various positions and of various ranks.  Captain Deeba transferred four officers, two male and two female, out of the Intelligence Division, including Sergeant Muldrow, who he transferred to the Fifth District, effective June 12, 2017.  Once assigned to the Fifth District, Sergeant Muldrow was responsible for the administrative upkeep and supervision of officers on patrol, reviewing and approving arrests, and responding to "Code 1" calls for service for crimes such as homicides, robberies, assaults, and home invasions.  As a result of her transfer, Sergeant Muldrow was required to work a rotating schedule including weekends, wear a police uniform, drive a marked police vehicle, and work within a controlled patrol area.  Sergeant Muldrow's salary remained the same, and although she was no longer eligible for the FBI's $17,500 annual overtime pay, other overtime opportunities were available to her.

Following this transfer, Sergeant Muldrow did not immediately return the FBI-issued vehicle and credentials.  Captain Deeba asked Sergeant Muldrow's FBI supervisor, Agent Jennifer Lynch, to notify him once Sergeant Muldrow returned her vehicle, explaining that it was standard policy for officers to return any equipment and for any specialized clearances to be made inactive following a transfer out of a specialized unit.  Included in the record is an email memorializing this conversation in which Captain Deeba summarized his request, stating, "Please ensure the FBI vehicle we spoke about that has not yet been turn [sic] in is returned

---

[2]The Department's policy states that only the "Chief of Police," aka the Police Commissioner, has the authority to make personnel changes.  However, based on Sergeant Muldrow's version of the facts and for the sake of simplicity, we refer to Captain Deeba as having made these changes, recognizing that, pursuant to the policy, he had to obtain approval from Interim Commissioner O'Toole.  See R. Doc. 57, at 3 ("Capt. Deeba requested permission from Comm'r O'Toole to make personnel changes soon after taking control."); see also McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank, 11 F.4th 702, 710 (8th Cir. 2021) (viewing facts in light most favorable to nonmoving party).

to your office and please advise me once this is completed." In that email, he also explained that this was the Department's standard practice, stating,

> Each time a [sic] officer is transferred from one unit to another, any/all equipment, vehicles, and access and clearance are turned in and such things as clearances are made inactive. They are not allowed to work further, start new cases or what not, to include to work [sic] any overtime compensation, with any State/Federal agencies; there are no exceptions.[3]

Captain Deeba also contacted Sergeant Muldrow, reminding her to return the FBI-issued vehicle, and Sergeant Muldrow's Fifth District supervisor, letting the supervisor know that Sergeant Muldrow had not yet returned the vehicle. Sergeant Muldrow then returned the vehicle and her FBI badge, and the FBI revoked her TFO status.

On June 22, 2017, Sergeant Muldrow filed a discrimination charge with the Missouri Commission on Human Rights (Commission), alleging that the City of St. Louis and Captain Deeba had discriminated against her, and was issued a right to sue letter. Around this time, Sergeant Muldrow began requesting a transfer from the Fifth District. Captain Coonce made informal requests for Sergeant Muldrow to be

---

[3]Below, Sergeant Muldrow argued that the email was an inaccurate representation of Captain Deeba's conversation with Agent Lynch and attempted to introduce portions of her own deposition testimony in which she relayed statements made by Agent Lynch regarding Agent Lynch's conversation with Captain Deeba. However, the district court found that this deposition testimony constituted inadmissible hearsay evidence. See R. Doc. 57, at 6 n.6. On appeal, Sergeant Muldrow again argues that a genuine dispute of material fact exists as to the contents of Captain Deeba's conversation with Agent Lynch. However, we need not consider this argument (or whether Sergeant Muldrow's deposition testimony constitutes inadmissible hearsay evidence) because, as discussed infra Section II.A, Sergeant Muldrow relies on an unavailable "cat's paw" theory of liability when arguing that the FBI's revocation of her TFO privileges constituted an adverse employment action. Therefore, our iteration of the facts includes only that which the district court found admissible (i.e., Captain Deeba's email to Agent Lynch).

-4-

transferred to the Second District to act as her administrative aide. However, Captain Coonce never made any formal request in writing. On July 5, Sergeant Muldrow requested a transfer to the Second District via PeopleSoft, the Department's software management system; in her deposition, she testified that upon her transfer to the Second District, she would have been assigned as Captain Coonce's administrative aide. Then, on July 26, Sergeant Muldrow applied for a position as a detective sergeant in the Second District. Finally, on August 3, Sergeant Muldrow applied for a sergeant investigator position in the Internal Affairs Division. Applicants for the sergeant investigator position were instructed to reapply when the position reposted because, due to an officer shortage, the sergeant investigator positions would not be filled until later in the year. On October 27, Sergeant Muldrow reapplied. Then, on February 5, 2018, while her application for the sergeant investigator position was still pending, she was transferred back into the Intelligence Division and her TFO privileges were reinstated. Following this transfer, Sergeant Muldrow withdrew her application for a sergeant investigator position.[4]

Sergeant Muldrow filed this action in Missouri state court, alleging: gender discrimination in violation of Title VII against the City of St. Louis; retaliation for reporting acts of discrimination in violation of Title VII against the City of St. Louis; gender discrimination in violation of the Missouri Human Rights Act against the City of St. Louis and Captain Deeba; and retaliation for reporting acts of discrimination in violation of the Missouri Human Rights Act against the City of St. Louis and Captain Deeba. The City of St. Louis and Captain Deeba removed the case to federal court and filed a motion for summary judgment on all four claims. The district court granted the motion as to Sergeant Muldrow's Title VII gender discrimination and retaliation claims against the City of St. Louis and declined to exercise supplemental jurisdiction over her state law claims against the City of St. Louis and Captain Deeba, dismissing those claims without prejudice. Sergeant Muldrow now appeals only the district court's grant of summary judgment in favor

---

[4]Upon Sergeant Muldrow's transfer back to the Intelligence Division, her PeopleSoft request to transfer to the Second District (to act as Captain Coonce's administrative aide) was also still pending.

of the City of St. Louis on her Title VII claims and makes no mention of the district court's dismissal of her state law claims.

## II.

We review the district court's grant of summary judgment de novo and view the facts in the light most favorable to Sergeant Muldrow, the non-moving party. See McGowen, Hurst, Clark & Smith, P.C., 11 F.4th at 710. "Summary judgment is warranted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" De Rossitte v. Correct Care Sols., LLC, 22 F.4th 796, 802 (8th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Ricci v. DeStefano, 557 U.S. 557, 586 (2009)).

### A.

Title VII dictates that "it is 'unlawful . . . for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Bostock v. Clayton Cnty., 140 S.Ct. 1731, 1738 (2020) (alteration in original) (quoting 42 U.S.C. § 2000e-2(a)(1)). Where the employee relies on indirect evidence of discrimination to establish her prima facie case, we apply the McDonnell Douglas[5] framework. See Bunch v. Univ. of Ark. Bd. of Trs., 863 F.3d 1062, 1068 (8th Cir. 2017); see also Turner v. Gonzales, 421 F.3d 688, 694 (8th Cir. 2005) (explaining that a "claim may survive a motion for summary judgment by creating an inference of unlawful discrimination through the familiar McDonnell Douglas three-step burden-shifting analysis"). To establish a prima facie case of gender

---

[5]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

-6-

discrimination, the plaintiff-employee must show that she was a member of a protected class, she was qualified to perform the job, she experienced an adverse employment action, and this treatment was different from that of similarly situated males. Turner, 421 F.3d at 694. If the employee sets forth a prima facie discrimination case, the burden shifts to the defendant-employer to "provide a 'legitimate, non-discriminatory justification for its adverse employment action.'" Bunch, 863 F.3d at 1068 (citation omitted). Then, if the employer proffers a legitimate justification, it becomes the employee's burden to demonstrate that the employer's proffered justification is pretextual. Id. The district court found that Sergeant Muldrow could not show that she experienced an adverse employment action, and therefore, summary judgment was appropriate because she failed to establish a prima facie case. We agree.

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 926 (8th Cir. 2007) (citation omitted); see also Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs., 728 F.3d 800, 804 (8th Cir. 2013) (characterizing "termination, cuts in pay or benefits, and changes that affect an employee's future career prospects" as adverse employment actions). "[M]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." Jackman, 728 F.3d at 804; see also Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997) ("'[A] transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action.' A transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action, '[o]therwise every trivial personnel action that an irritable . . . employee did not like would form the basis of a discrimination suit.'" (second and third alterations in original) (citations omitted)); cf. Turner, 421 F.3d at 697 ("We are not persuaded that the normal inconveniences associated with any transfer, such as establishing one's professional connections in a new community, are sufficient, without more, to demonstrate a significant change in working conditions.").

In Sergeant Muldrow's view, her transfer from the Intelligence Division to the Fifth District constituted an adverse employment action because her Fifth District work was more administrative and less prestigious than that of the Intelligence Division, meaning that it was more akin to "the basic entry level [work] of being a police officer or sergeant."  The only evidence Sergeant Muldrow offers in support of her argument is her own deposition testimony, and like the district court, we do not find this persuasive such that it is capable of defeating summary judgment.  Cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (citations omitted)).  Further, in that testimony, she explained that upon her transfer, her pay and rank remained the same, she was given a supervisory role, and she was responsible for investigating violent crimes, such as homicides and robberies.  She admitted that her time in the Fifth District, which lasted only approximately eight months, did not harm her future career prospects.  Additionally, although Sergeant Muldrow lost the opportunity to receive $17,500 annually for FBI-related overtime work, she was still eligible for overtime pay while assigned to the Fifth District and simply chose not to take advantage of those opportunities.

This Court has repeatedly found that an employee's reassignment, absent proof of harm resulting from that reassignment, is insufficient to constitute an adverse employment action.  See, e.g., Holland v. Sam's Club, 487 F.3d 641, 645 (8th Cir. 2007) (finding that a "transfer from operating a forklift in the warehouse to being a stocker in electronics" was not an adverse employment action because it "involved no change in pay or benefits and only minor changes in . . . working conditions"); Zhuang v. Datacard Corp., 414 F.3d 849, 854 (8th Cir. 2005) (finding that a transfer from a "developer position" to a "tester position" was not an adverse employment action because the employee's "pay and benefits remained the same" and she simply preferred "one position over the other").  Sergeant Muldrow's transfer to the Fifth District did not result in a diminution to her title, salary, or benefits.  She offers no evidence that she suffered a significant change in working

-8-

conditions or responsibilities and, at most, expresses a mere preference for one position over the other. See Jackman, 728 F.3d at 804. In fact, she admitted as much in her deposition, explaining that she did not like her assignment in the Fifth District as much as she liked her assignment in the Intelligence Division. This is insufficient to show that her transfer constituted an adverse employment action. See, e.g., Ledergerber, 122 F.3d at 1144.

Sergeant Muldrow also cites the revocation of her TFO status as an adverse employment action. The record shows, and the parties do not dispute, that the FBI had the sole authority to revoke Sergeant Muldrow's TFO status. In order to hold the City of St. Louis responsible for this revocation, Sergeant Muldrow relies on a "cat's paw" theory of liability. "[C]at's-paw refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." Pribyl v. Cnty. of Wright, 964 F.3d 793, 797 (8th Cir. 2020) (alteration in original) (citation omitted). Under a cat's paw theory, "an employer may be vicariously liable for an adverse employment action if one of its agents—other than the ultimate decision maker—is motivated by discriminatory animus and intentionally and proximately causes the action." Bennett v. Riceland Foods, Inc., 721 F.3d 546, 551 (8th Cir. 2013). Sergeant Muldrow alleges that Captain Deeba, motivated by his discriminatory animus against her, caused the FBI to revoke her TFO status by contacting both her Fifth District supervisor and Agent Lynch, and thus, the adverse employment action is attributable to the City of St. Louis.

Sergeant Muldrow sets forth only two cases in support of her argument. In both cases, the person with the alleged discriminatory animus, the decisionmaker, and the defendant sued for discrimination were part of the same entity. See Torgerson, 643 F.3d at 1044-45 (plaintiffs sued city for city council's discriminatory hiring practices that were allegedly influenced by city council-appointed commissioner); Richardson v. Sugg, 448 F.3d 1046, 1060 (8th Cir. 2006) (plaintiff sued university's chancellor and president for university's discriminatory termination decision that was allegedly influenced by the university's athletic

-9-

director). Sergeant Muldrow does not direct us to, nor have we found, any case supporting her assertion that the cat's paw theory is applicable in scenarios like the one currently before us where the alleged decision maker (here, the FBI) was not a part of the organization sued for discrimination (here, the City of St. Louis). We therefore decline to hold the City of St. Louis responsible for the FBI's revocation of Sergeant Muldrow's TFO status.

Finally, Sergeant Muldrow argues that the City of St. Louis's failure to transfer her from the Fifth District to the Second District to work as Captain Coonce's administrative aide constituted an adverse employment action. "Denial of a sought-after transfer may constitute an adverse employment action if the transfer would result in a change in pay, rank, or material working conditions." Bonenberger v. St. Louis Metro. Police Dep't, 810 F.3d 1103, 1107 (8th Cir. 2016) (emphasis omitted). When determining if denial of a sought-after transfer constitutes an adverse employment action, we look to the same factors that we did when deciding whether Sergeant Muldrow's involuntary transfer to the Fifth District constituted an adverse employment action, such as whether the sought-after transfer would have resulted in a change in supervisory duties, prestige, schedule and hours, or promotion potential. See id. at 1108.

Sergeant Muldrow does not demonstrate how the sought-after transfer would have resulted in a material, beneficial change to her employment, and absent such showing, we find that the City of St. Louis's failure to transfer her was not an adverse employment action. See id. Sergeant Muldrow analogizes her case to Bonenberger, but we find Bonenberger to be factually distinct. There, the plaintiff-employee, a white male officer for the Department, sought a position as the Assistant Academy Director of the St. Louis Police Academy. See id. at 1105. He was expressly told by his superiors that he would not be awarded the position because it would be given to a black female officer, and at trial, he presented evidence that the position "involved significant supervisory duties" and "offered more 'contact with command rank officers.'" See id. at 1105, 1108. Notably, Officer Bonenberger also presented historical evidence showing that "sergeants who held the position of Assistant

-10-

Academy Director were 'significantly' more likely to be promoted to Lieutenant." See id. at 1108.

Here, Sergeant Muldrow does not offer such persuasive evidence. Instead, she offers only her own and Captain Coonce's deposition testimony, in which Captain Coonce explained that the administrative aide position was more "high profile" than Sergeant Muldrow's position in the Fifth District and would have given Sergeant Muldrow the "inside track" as to what was "going on." Captain Coonce also testified that most administrative aides received things like laptops or iPads to assist them with their work. Sergeant Muldrow argues that the City of St. Louis's denial of her transfer "caused her to miss out on employment opportunities," and, in her deposition, provided testimony similar to that of Captain Coonce. This testimony does not explain how or why Sergeant Muldrow was harmed by not being awarded the administrative aide position—only that, in their view, she would have been seen as having a higher profile, been privy to more information, and perhaps been given a laptop or iPad.

Further, as a practical matter, Captain Coonce only made two informal requests, and although Sergeant Muldrow made a request to transfer to the Second District, this request remained pending at the time of her transfer back to the Intelligence Division. So, there is, in fact, not a denial for us to review. Moreover, in her deposition testimony, Sergeant Muldrow admitted that the administrative aide position would not have resulted in an increase in her pay or rank and as mentioned, that her time in the Fifth District did not harm her career prospects. In light of this, a reasonable trier of fact could not find that Sergeant Muldrow suffered an adverse employment action. See Torgerson, 643 F.3d at 1042.

Therefore, concluding that her transfer to the Fifth District, the revocation of her TFO status, and the denial of her sought-after transfer to the Second District did not constitute adverse employment actions for which the City of St. Louis is responsible, we find that Sergeant Muldrow failed to set forth a prima facie case of

-11-

gender discrimination and affirm the district court's grant of summary judgment on this claim.

B.

In addition to Title VII's protection against discrimination on the basis of "race, color, religion, sex, or national origin," see Bostock, 140 S. Ct. at 1738 (citation omitted), "[a] separate section of the [Civil Rights] Act—its antiretaliation provision—prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56 (2006) (second alteration in original) (citing 42 U.S.C. § 2000e-3(a)). To establish a prima facie case of retaliation, an employee-plaintiff must show that "(1) she engaged in protected conduct, (2) she suffered a materially adverse employment act, and (3) the adverse act was causally linked to the protected conduct." See Bunch, 863 F.3d at 1069 (citation omitted). As with her gender discrimination claim, Sergeant Muldrow relies on indirect evidence to establish a prima facie case of retaliation, so we again apply the McDonnell Douglas burden-shifting standard. See Gibson v. Geithner, 776 F.3d 536, 540 (8th Cir. 2015). If the employee establishes a prima facie case, "the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action." Pye v. Nu Aire, Inc., 641 F.3d 1011, 1021 (8th Cir. 2011) (citation omitted). If the employer satisfies its burden, "the burden then shifts back to the employee to put forth evidence of pretext." Id.

In Burlington Northern, the Supreme Court characterized the level of harmfulness that an employer's adverse action(s) must reach to fall within the antiretaliation provision's phrase "discriminate against," explaining that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" 548 U.S. at 68 (citation omitted); see also Littleton v. Pilot Travel Ctrs., LLC, 568 F.3d

-12-

641, 644 (8th Cir. 2009) ("Our post-[Burlington Northern] decisions have consistently held that, to be materially adverse, retaliation cannot be trivial; it must produce some 'injury or harm.'" (citation omitted)). Pursuant to Burlington Northern, we are directed to engage in a fact-intensive analysis, evaluating an employee's suffered harm from the objective standard of a reasonable employee, as we do in many other Title VII contexts. See 548 U.S. at 69 ("We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters."). When determining if an employee has suffered a materially adverse employment action, "[w]e will consider each action in turn and thereafter evaluate their cumulative force." See Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir. 2007), abrogated on other grounds by Torgerson, 643 F.3d at 1043.

Sergeant Muldrow alleges that the City of St. Louis retaliated against her for filing a discrimination charge with the Commission, and in support, she cites three allegedly materially adverse actions. First, the City of St. Louis "ignored" her July 5 request to transfer to the Second District. She asserts that this was a materially adverse action "because there were more Sergeants assigned to District Five (5) then [sic] were necessary to fill shifts." Second, the City of St. Louis did not approve her July 26 application for a Second District detective sergeant position that was more prestigious than her position in the Fifth District and "would have exposed her to command staff on a regular basis, which would have been helpful in any future promotional process." Finally, the City of St. Louis "refus[ed]" to award her a position in the Internal Affairs Division as a sergeant investigator, a position that involved "sensitive investigations" and "more responsibilities and duties"; would have "improved her career prospects"; and offered her a traditional Monday through Friday schedule.

However, we find that these actions, either individually or cumulatively, did not amount to a materially adverse action. Sergeant Muldrow argues that these were materially adverse employment actions because she did not receive transfers that she wanted. However, an employer is not tethered to every whim of its employees. Cf.

-13-

Burlington N., 548 U.S. at 68 (only prohibiting "*material* adversity" and specifically "separat[ing] significant from trivial harms"); see also Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002) ("Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." (citation omitted)). The fact that there were fewer sergeants assigned to the Second District than the Fifth District tells us nothing about why the failure to transfer Sergeant Muldrow into the Second District constituted a materially adverse action. And, although she argues that her career was detrimentally impacted when she was not given the Second District detective sergeant position or the Internal Affairs Division sergeant investigator position, we once again find that her own deposition testimony undercuts her argument: she testified that her time in the Fifth District did not result in long-term harm to her career. Further, although Sergeant Muldrow alleges that, as a sergeant investigator with the Internal Affairs Division, she would have worked on more sensitive investigations, she offers no explanation or helpful comparison in support of this allegation to shed light on what type of investigations she would have been working on and how those investigations would have been different from the violent crime investigations she was tasked with in the Fifth District. Finally, although Sergeant Muldrow contends that she would have benefitted from a traditional schedule in the Internal Affairs Division, in Recio v. Creighton University, we explained that "[t]he mere fact" that an employee was "disallowed . . . from maintaining her preferred . . . schedule, without any indication that [she] suffered a material disadvantage as a result of the action, does not 'meet the significant harm standard set forth in Burlington Northern.'" See 521 F.3d 934, 940 (8th Cir. 2008) (citation omitted).

Ultimately, Sergeant Muldrow is unable to point to any "injury or harm" that resulted from the City of St. Louis's failure to transfer her from the Fifth District. See Littleton, 568 F.3d at 644 (citation omitted). Absent such a showing, we agree with the district court that Sergeant Muldrow has not suffered a material adverse action sufficient to dissuade a reasonable employee from making a claim of

discrimination and therefore, has not established a prima facie case of retaliation. Summary judgment is appropriate.[6]

### III.

For the foregoing reasons, we affirm the district court's grant of summary judgment.

_____

---

[6] The United States Department of Justice (DOJ) submitted an amicus curiae brief featuring three pages of argument, none of which pertains to this case. Instead, the DOJ used those three pages to make a general argument that "transferring an employee on the basis of sex is actionable under Section 703(a)(1) of Title VII of the Civil Rights Act . . . and that no further showing of a 'material' harm or 'significant' change in employment status is required for the transfer to be actionable." The DOJ then directed us to briefs that it has previously written—one is a brief in opposition to a petition for a writ of certiorari, which was denied, and the other is an amicus brief in support of a petition for a writ of certiorari, which was voluntarily dismissed—and inserted those briefs in its amicus brief. Not only is it unhelpful to submit an amicus brief wholly unrelated to the case currently before this Court, but the DOJ writes in support of a position clearly contravened by the Supreme Court's and this Court's precedent. See, e.g., Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 174 (2011) (applying Burlington Northern's standard and asking whether the employer action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination"); AuBuchon v. Geithner, 743 F.3d 638, 641-42 (8th Cir. 2014) (same); Hill v. City of Pine Bluff, 696 F.3d 709, 715 (8th Cir. 2012) (same). Further, an amicus filing must include "the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case," and the cover must include an indication of "whether the brief supports affirmance or reversal." Fed. R. App. P. 29(a)(3)(B), (4). Here, the DOJ states only that it "has a substantial interest in the proper interpretation of Title VII of the Civil Rights Act" and expressly disclaims having any "position on the merits of [Sergeant Muldrow's] claim or on any other issues presented in this appeal." Further, the brief's cover notes that the brief is "in support of neither party." For that reason, although we have permitted the DOJ to submit a brief, we expressly state that we do not find it helpful.

# United States Court of Appeals
## *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

April 04, 2022

Ms. Megen Ilene Hoffman
RICK BARRY LAW OFFICES, PC
Suite 1301
1034 Brentwood Boulevard
Saint Louis, MO  63117

RE:  20-2975  Jatonya Muldrow v. City of St. Louis, State of Mo, et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc must be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

CMD
Enclosure(s)

cc:	Ms. Anna Marks Baldwin
	Mr. Richard Andrew Barry III
	Ms. Tovah Calderon
	Ms. Sheena Hamilton
	Mr. Korey Lewis
	Mr. Gregory J. Linhares
	Ms. Bonnie I. Robin-Vergeer
	Ms. Alexis Lee Silsbe

District Court/Agency Case Number(s):   4:18-cv-02150-AGF

# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

April 04, 2022

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

**<u>REVISED LETTER</u>**

RE: 20-2975  Jatonya Muldrow v. City of St. Louis, State of Mo, et al

Dear Sirs:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellant was Megen Ilene Hoffman, of Saint Louis, MO. The following attorney(s) appeared on the appellant brief;  Richard Andrew Barry, III, of Saint Louis, MO.

Counsel who presented argument on behalf of the appellee was Sheena Hamilton, of Saint Louis, MO. The following attorney(s) appeared on the appellee brief;  Alexis Lee Silsbe and Korey Lewis, of Saint Louis, MO.

The United States of America also appeared as an amicus party in support of neither party.  Appearing on the amicus brief were Anna M. Baldwin and Tovah Calderon of USDOJ, Civil Rights Division, Washington DC.

The judge who heard the case in the district court was Honorable Audrey G. Fleissig. The judgment of the district court was entered on September 11, 2020.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

CMD
Enclosure(s)

cc:  MO Lawyers Weekly

District Court/Agency Case Number(s):  4:18-cv-02150-AGF